IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

```
WILLIAM R. COLEMAN,              )
                                 )
              Plaintiff,         )   Civ. No. 05-6243-AA
                                 )        OPINION AND ORDER
                                 )
       v.                        )
                                 )
MCGRATH'S PUBLICK FISH HOUSE, INC.,)
an Oregon corporation, dba MCGRATH'S )
PUBLICK FISH HOUSE,              )
                                 )
              Defendant.         )
_____)
```

Kevin T. Lafky
Larry L. Linder
Lafky & Lafky
429 Court Street, N.E.
Salem, OR 97301
    Attorneys for plaintiff

Edwin A. Harnden
Andrew M. Schpak
Barran Liebman
601 SW Second Ave., Suite 2300

Page 1 - Opinion and Order

Portland, OR 97204-3159
     Attorneys for defendant

AIKEN, Judge:

Pursuant to Fed. R. Civ. P. 56, defendant moves for summary judgment on plaintiff's claims for race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and Or. Rev. Stat. § 659A. For the reasons set forth below, defendant's motion is denied.

## FACTS

Plaintiff, William Coleman ("Coleman"), an African American, worked as a cook for defendant, McGrath's Publick Fish House ("McGrath's"), from July 28, 2002, until May 9, 2004. Prior to May 9, 2004, Coleman had never been scheduled to work, nor did he ever work, the weekend shifts at McGrath's. Coleman Dep. at 59:21-24.

While at work on May 6, 2004, McGrath's Kitchen Manager, Brad Smith ("Smith"), said to Coleman, "I got you for Sunday." Id. at 72:13-15. Coleman asked Smith what he meant, and Smith answered, "I've got you scheduled for Sunday." Id. at 74:7-13. Coleman told Smith that he couldn't work Sunday, May 9, 2004 (Mother's Day), because he "had plans." Id. at 74:15. After their initial conversation, Smith returned to Coleman and allegedly said, "You're going work for me this Sunday or else." Id. at 75:14-15. Coleman said he "just kept working, I just – you know, I took it in and just kept working, I didn't respond to

Page 2 - Opinion and Order

it."  Id. at 75 18-20.

Plaintiff returned to work the next evening, May 7, 2004, although not scheduled to work, because he wanted to talk to Smith and McGrath's General Manager, Steve Kamm ("Kamm"), about the schedule.  Id. at 76:12-15.  When plaintiff told Smith and Kamm that he could not work on Mother's Day because "I have plans," Smith responded, "Well, I'm going to have to take you off the schedule," and he walked away.  Id. at 78:2-6.  Plaintiff understood Smith's comment to mean that he would be terminated. Id. at 78:10-12.  McGrath's Vice President and Director of Operations, James Marshall ("Marshall"), testified that he and Smith both understood the phrase "taken off the schedule" to mean that plaintiff would "no longer be with the company."[1]  Marshall Dep. at 14: 18-21.  Plaintiff stated on the record that prior to May 6, 2004, he had not been disciplined by anyone at McGrath's for any reason, including missing a shift.  Coleman Dep. at 71:11-12.

Plaintiff did not show up for his shift on Sunday, May 9, 2004.  Id. at 91:14.  The next day, Monday, May 10, 2004,

---

[1] Although initially believing Smith's statement that plaintiff "would be taken off the schedule" meant plaintiff would be terminated, Marshall now says his understanding has changed: "And what Brad was intending, I now come to understand, is that he was wanting to tell him he needed to come in to determine his fate with the company, whether he would continue to work there or whether he would continue not to work there."  Marshall Dep. at 14:22-25, 15:1-2.

Page 3 - Opinion and Order

plaintiff went to McGrath's to pick up his paycheck.[2] <u>Id.</u> at 91:19-20. Plaintiff did not talk to anyone at that point. <u>Id.</u> Plaintiff's Separation Notice states he was "discharged." Pl's Ex. 11. Smith, however, stated that plaintiff was never terminated, but that "he needed to come in and discuss this problem before I put him back on the schedule." Smith Dep. 39:7-20.

    Terry Rhoads ("Rhoads"), a Caucasian, also worked for McGrath's as a cook and was similarly scheduled to work on Mother's Day, May 9, 2004. Defendant alleges Rhoads showed up late for his shift but had a facially valid excuse: his home was burglarized. Rhoads states that he did not, in fact, come to work at all on May 9, 2004, and further, McGrath's did not terminate him for failing to show up to work. Decl. of Terry Rhoads at ¶ 2. Additionally, Rhoads states, "I did not communicate to McGrath's that I was absent from my shift on May 9, 2004, due to my home being broken into or burglarized." <u>Id.</u> at ¶ 3. Subsequently, Rhoads failed to show up for additional scheduled shifts at McGrath's, but he remained on the schedule and was not terminated. <u>Id.</u> at ¶ 4. His Separation Notice states that he "voluntarily quit." Pl.'s Ex. 12.

---

[2] Kamm testified that employees at the Lancaster location are "paid every other Thursday," but that there is a process to expedite checks for employees who have been terminated, and it is possible for management to call in for a check. Kamm Dep. at 45:10-21.

Page 4 - Opinion and Order

STANDARDS

Fed. R. Civ. P. 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: 1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and 2) all inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 630.

## DISCUSSION

I. Discrimination - Disparate Treatment Claim Under Title VII

    A.    Prima Facie Case

        1.    Legal Standard

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1) (2006).  An individual suffers disparate treatment when he or she is "singled out and treated less favorably than others similarly situated on account of race."  McGinest v. G.T.E. Serv. Corp., 360 F.3d 1103, 1121 (9th Cir. 2004).  To establish a disparate treatment claim, a plaintiff must first present a prima facie case of discrimination, which creates a presumption that the employer undertook the challenged employment action because of plaintiff's race.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), cert. denied, 522  U.S. 950 (1997).

In order to establish a prima facie case, a plaintiff must prove the following elements: 1) plaintiff is a member of a protected class; 2) plaintiff was qualified or performing his job in a satisfactory manner; 3) plaintiff suffered an adverse

employment action; and 4) plaintiff was treated differently than other persons outside his protected class. McDonnell Douglas Corp., 411 U.S. at 802; Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115 (9th Cir. 2000). The requisite degree of proof necessary to establish a prima facie case on summary judgment is minimal and need not rise to the level of a preponderance of the evidence. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).

    2.   Analysis

Defendant contests only the fourth prong of plaintiff's prima facie case; defendant alleges plaintiff has no evidence to show he was treated differently than other persons outside his protected class. Def.'s Mem., p. 7. I disagree. To demonstrate that he was treated differently than a person outside his protected class, plaintiff points to the different treatment Rhoads received. Both employees were scheduled to work on Sunday, May 9, 2004, and both missed their shifts. Plaintiff was terminated for his absence;[3] Rhoads was reprimanded but remained

---

[3]Defendant argues that plaintiff was not terminated. Plaintiff relies on defendant's response to plaintiff's BOLI and EEOC complaints, stating that plaintiff was terminated. Marshall Dep. 11:9-12:4; Pl.'s Ex. 10. Further, plaintiff's Separation Notice from defendant states that he was "discharged." Pl.'s Ex. 11; Smith Dep. 17:18-24. Marshall testified that if an employee has a "no call, no show" on a day when he or she is scheduled and required to be at work, defendant's policy is "automatic termination." Marshall Dep. 10:21-11:1. Although defendant at times suggests that plaintiff was not terminated, I find sufficient evidence in the record from which a jury could conclude plaintiff was terminated. Further, the fact defendant contests only the fourth prong of plaintiff's case suggests defendant at least agrees plaintiff suffered an adverse employment action.

Page 7 - Opinion and Order

employed with scheduled work shifts.

Defendant challenges plaintiff's assertion that he and Rhoads were similarly situated in all relevant aspects, and that Rhoads' actions were as serious as plaintiff's.  Defendant alleges that plaintiff's absence from work on May 9, 2004, amounted to "intentional and deliberate disregard of defendant's instructions, whereas Rhoads' actions amounted to an attendance issue for which he was disciplined."  Def.'s Reply, p. 4; Smith Dep. 48:6-12.  Further, defendant characterizes plaintiff's actions as "blatant insubordination that renders his acts significantly more serious than those of Rhoads."  Def.'s Reply, p. 3.  I note, however, that plaintiff's Separation Notice states he was discharged for "attendance problems," and there is no mention of "blatant insubordination."  Pl.'s Ex. 11.  Based upon the record before me, and noting that all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, I find that at least a disputed issue of fact exists as to whether plaintiff and Rhoads are similarly situated in that there is evidence they held the same job and displayed similar conduct in failing to work an assigned shift. See Fed. R. Civ. P. 56; T.W. Elec. Serv., Inc., 809 F.2d at 630; and McDonnell Douglas Corp., 411 U.S. at 804.  Because the record suggests plaintiff and Rhoads engaged in similar conduct with different results, I find plaintiff has offered the requisite

degree of proof necessary to show plaintiff was treated differently than other persons outside his protected class. Therefore, plaintiff has established a prima facie case of discrimination. Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).

  B. Legitimate Non-Discriminatory Reason

    1. Legal Standard

Once plaintiff has established a prima facie case, the burden of production, but not persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action. Vasquez, 349 F.3d at 640.

    2. Analysis

As its legitimate, non-discriminatory reason for terminating plaintiff, defendant states that it terminated plaintiff because he "disregarded the instructions that Brad Smith gave him in two separate conversations regarding showing up for his Mother's Day shift." Def.'s Reply, p. 5. Defendant maintains that plaintiff's acts amounted to insubordination. Id.; Smith Dep. 39:16-40:14. I find that defendant has satisfied its burden of presenting a legitimate, non-discriminatory reason for terminating plaintiff. See Sischo-Nownejad v. Merced. Comm. College Dist., 934 F.2d 1104, 1109 (9th Cir. 1991).

///

///

Page 9 - Opinion and Order

C.  Pretext

    1.  Legal Standard

If a defendant provides a legitimate, nondiscriminatory reason for termination, the plaintiff must then show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Chuang, 225 F.3d at 1124 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)).  A plaintiff in an employment discrimination action must produce very little evidence to overcome an employer's motion for summary judgment.  Id.  In fact, a disparate treatment plaintiff can survive summary judgment without producing evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143-44 (2000); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinders disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").  Thus, although the plaintiff always retains the burden of persuasion, Burdine, 450 U.S. at 253, he does not necessarily

have to introduce additional, independent evidence of discrimination at the pretext stage. <u>Reeves</u>, 530 U.S. at 148.

   2.   Analysis

   Here, plaintiff employs indirect evidence to argue that defendant's proffered explanation is unworthy of credence. Defendant argues plaintiff has offered only his own subjective belief and opinions, rather than evidence, to show pretext. Def.'s Mot., p. 9.  I disagree and find that plaintiff's <u>prima facie</u> case raises genuine issues of material fact to challenge the credence of defendant's proffered nondiscriminatory reasons.

   Defendant maintains it terminated plaintiff because he missed work on May 9, 2004, in an act of insubordination. Plaintiff counters that defendant knew it was his custom not to work on Sundays; he had never worked, nor been assigned to work, on a Sunday in the past; he purposefully told management that he could not work on May 9, 2004; and he did not know he was scheduled to work May 9, 2004, until May 6, 2004.  Pl.'s Mem. in Resp., p. 11.  Nevertheless, Plaintiff failed to show up for work on May 9, 2004, and was removed from the schedule and "discharged."  In contrast, Rhoads, a white cook at McGrath's who similarly failed to show up for his scheduled shift on May 9, 2004, was reprimanded but remained on the schedule.  This divergent treatment is suspect, especially in light of the testimony of Marshall, McGrath's Vice President and Director of

Page 11 - Opinion and Order

Operations, who stated that if an employee has a "no call, no show" on a day when he is scheduled and required to be at work, defendant's policy is automatic termination. Marshall Dep. 10:21-11:5. Kamm testified he did not know why Rhoads, who "no called and no showed" on several occasions, was considered to have "voluntarily quit." Kamm Dep. 53:13-17.

Defendant argues Rhoads was not terminated for missing his scheduled shift on Mother's Day because he provided a valid reason for his absence. Pl.'s Resp., p. 7. Defendant alleges Rhoads told his manager he missed his scheduled shift because he was detained by police in connection with his home being burglarized. Smith Dep. 47:18-23. Defendant alleges Rhoads showed his manager a police report. However, Rhoads stated that he did not tell Smith he had been detained by police, and he did not show Smith a police report. Rhoads Decl. ¶ 3. Smith testified that he did not review the documentation he allegedly received from Rhoads, nor did he photocopy it. This conflicting testimony presents a genuine issue of material fact as to whether Rhoads actually provided a valid reason for not showing up for his scheduled shift. These disputed issues of material fact make summary judgment inappropriate.

Further, Smith testified that receiving "[t]hree writeups is a grounds for termination with McGrath's policies." Smith Dep. at 1113-14. Rhoads received his fourth writeup on May 9, 2004,

yet he was not terminated. Pl.'s Ex. 12. Plaintiff asserts that according to defendant's policies, Rhoads should have been terminated for missing his scheduled shift on May 9, 2004.

Finally, plaintiff presents evidence to suggest defendant falsified plaintiff's employment records. Specifically, there is an "Employee Warning Notice" in plaintiff's file, which states that plaintiff received a warning about poor attendance prior to his separation from defendant. Adams Dep. 15:1-19; Pl.'s Ex. 9. The document contains three dates when plaintiff allegedly received warnings: February 6, 2002, February 9, 2002, and May 6, 2002; however, plaintiff did not begin working for defendant until July 28, 2002. Plaintiff argues that this document, which states he was "warned" previously about failing to show up for scheduled shifts on dates when he was not even employed by defendant, creates an issue of fact as to the document's legitimacy and the purpose for which it might have been drafted.

In sum, I find that plaintiff has presented genuine issues of material fact regarding the legitimacy of Rhoads' excuse and absence from work on May 9, 2004. Further, I find that plaintiff has presented evidence to suggest that defendant's stated reasons for terminating plaintiff, but not Rhoads, are not worthy of credence. As noted above, a disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if

that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons. Reeves, 530 U.S. at 143-44. Because I find that there is a genuine issue of material fact regarding the truth of defendant's proffered reasons, defendant's motion for summary judgment is denied.

II. Or. Rev. Stat. § 659A

Or. Rev. Stat. § 659A.030(1)(b) states that it is an unlawful employment practice: "For an employer, because of an individual's race . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

Defendant argues that the McDonnell-Douglas burden-shifting analysis applies to employment discrimination claims brought under Or. Rev. Stat. § 659.030; however, courts have rejected that approach. Williams v. Freightliner, LLC, 196 Or.App. 83, 89-90, 100 P.3d 1117 (2004); see Lansford v. Georgetown Manor, Inc., 192 Or.App. 261, 277, 84 P.3d 1105, adh'd to on recons., 193 Or.App. 59, 88 P.3d 305, rev. den., 337 Or. 182, 94 P.3d 877 (2004) ("[w]e do not follow the federal approach to pretext claims under Oregon law"); Henderson v. Jantzen, Inc., 79 Or.App. 654, 657, 719 P.2d 1322, rev. den., 302 Or. 35, 726 P.2d 934 (1986) (in Callan,"we rejected the shifting burden formula of McDonnell Douglas"); Callan v. Confederation of Or. Sch. Adm'rs, 79 Or.App. 73, 77, 717 P.2d 1252 (1986) ("We conclude that the

Page 14 - Opinion and Order

burden does not shift from the plaintiff in Oregon discrimination actions in which the issue is simply whether the plaintiff's allegation or the employer's denial of discrimination is correct.").

The Oregon Supreme Court has rejected the burden-shifting analysis for "pretext" claims brought under Oregon law. Hardie v. Legacy Health Sys., 167 Or.App. 425, 434, 6 P.3d 531 (2000)(citing City of Portland v. Bureau of Labor and Indus., 298 Or. 104, 114-15, 690 P.2d 475 (1984)). Thus, "a plaintiff's prima facie case does not disappear merely because a defendant asserts a nondiscriminatory reason which may or may not persuade the trier of fact." Henderson, 79 Or.App. at 658. Further, Oregon courts have noted that because discriminatory intent can be difficult to prove, unless it is an openly declared policy, "an inference drawn from the conduct giving rise to the particular charge or cause of action may be the only proof available." Williams, 196 Or.App. at 93 (quoting McCuller v. Gaudry, 59 Or.App. 13, 17, 650 P.2d 148 (1982)). Thus, the Ninth Circuit, applying Oregon law, held that where an employee establishes a prima facie claim of employment discrimination, summary judgment is inappropriate even in the face of assertions by the defendant of nondiscriminatory action. Messick v. Horizon Indus., Inc., 62 F.3d 1227, 1232 (9th Cir. 1995).

///

Page 15 - Opinion and Order

Here, plaintiff has established a <u>prima facie</u> case of discrimination. Defendant's legitimate, nondiscriminatory reason for terminating plaintiff does not negate the inference that defendant's termination of plaintiff was motived by unlawful discrimination. Further, because there are disputed issues of fact surrounding the circumstances of plaintiff's termination, as well as defendant's employment policies and treatment of Rhoads, and because there is a question of fact as to whether discrimination motivated plaintiff's termination, defendant's motion for summary judgment on the state claim is also denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (doc. 23) is denied.

IT IS SO ORDERED.

Dated this <u> 1 </u> day of August 2006.

<u>    /s/ Ann Aiken    </u><br>
Ann Aiken<br>
United States District Judge